No. 20-1267

# *In the*
# *United States Court of Appeals*
# *for the First Circuit*

---

TREZJUAN THOMPSON,
*Petitioner-Appellant*,
v.
UNITED STATES OF AMERICA,
*Respondent-Appellee.*

---

On Appeal from the United States District Court
for the District Court of Maine

**REPLY BRIEF OF THOMPSON**

---

Seth H. Kretzer
LAW OFFICES OF SETH KRETZER
917 Franklin St.; Floor Six
Houston, Texas 77002
seth@kretzerfirm.com (email)

[Tel.] (713) 775-3050
[Fax.] (713) 929-2019

COURT-APPOINTED ATTORNEY FOR
APPELLANT THOMPSON

## TABLE OF CONTENTS

Table of Authorities ........................................................................ ii

Argument........................................................................................... 1

I. Introduction: Thompson Never Judicially Admitted To Any Particular Drug Type Or Quantity Germane To the 2007 Maine Conviction During His Federal Sentencing In The Case Sub Judice... 1

II. The Government Is Trying To Make Arguments Broader Than The Scope Of This Court's Grant of C.O.A. Admits To...................... 2

III. The Government Is Speculating As To Strategic Reasons That Sentencing Counsel Might Have Had For Not Objecting To the Maine Narcotics Conviction ................................................................ 5

IV. The Government's Citations To Steed and Reed Are Apropos of Nothing ................................................................................... 7

V. Prejudice/ Harm Analysis [Germane To Strickland's Second Prong]: At Sentencing, The District Judge Was Clear "if, in fact, I'm reversed on appeal in terms of career offender status, he could pursue those later" ................................................................ 9

Conclusion ........................................................................................ 11

Certificate of Service ........................................................................ 12

Certificate of Compliance .................................................................. 13

## TABLE OF AUTHORITIES

Cases

*Knight v. Spencer*, 447 F.3d 6 (1st Cir. 2006) ....................6

*Lafler v. Cooper*, 566 U.S. 156, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012)............5

*Sleeper v. Spencer*, 510 F.3d 32 (1st Cir. 2007)....................9

*Strickland v. Washington*, 466 U.S. 668 (1984) .......................... 5, 6, 7, 8, 9, 10, 11

*United States v. Messner*, 37 F.4th 736 (1st Cir. 2022)....................5

*United States v. Reed*, 830 F.3d 1 (1st Cir. 2016). ....................7, 8

*United States v. Steed*, 879 F.3d 440 (1st Cir. 2018).................... 7, 8, 9

*United States v. Thompson*, 851 F.3d 129 (1st Cir. 2017)....................3

*Wheat v. United States*, 486 U.S. 153 (1988) ....................4

*Wiggins v. Smith*, 539 U.S. 510 (2003)....................6

*Wood v. Allen*, 558 U.S. 290 (2010) ....................6

*Yeboah-Sefah v. Ficco*, 556 F.3d 53 (1st Cir. 2009)....................9

Statutes

17-A M.R.S. § 1103 .................... 3, 4, 5, 9

U.S.S.G. § 4B1.1....................10

U.S.S.G. § 4B1.2(b) .................... 3, 5, 11

## ARGUMENT

### I. INTRODUCTION: THOMPSON NEVER JUDICIALLY ADMITTED TO ANY PARTICULAR DRUG TYPE OR QUANTITY GERMANE TO THE 2007 MAINE CONVICTION DURING HIS FEDERAL SENTENCING IN THE CASE *SUB JUDICE*

At the outset, Counsel must clarify one aspect of his opening brief. On page 4, the 2007 judgment from Maine state court is reproduced. The opening brief stated: "it was not submitted to the sentencing court as an exhibit to the PSR." This statement requires a qualification. The Maine state court document was not appended to the PSR as it appeared in the file; indeed, PSR Paragraph 43 stated "[f]urther documentation from the presiding Court has been requested." GSA-13. However, this document was admitted as Exhibit 43 ("Androscoggin County Superior Court Judgment and Commitment for case CR- 06-928") at sentencing. ECF. No. 118, p. 22. In other words, the "J&C" was submitted to the sentencing court, albeit not as an attachment to the PSR- but rather subsequent to the PSR's issuance.

Even if this fact was stated maladroitly in the opening brief, the important point to take away is that "the J&C does not specify which drug formed the basis for Thompson's trafficking conviction, nor does it specify the quantity of controlled substances at issue in the case." Appellant's Br. at 4 (quoting ECF No. 139).

At sentencing held June 20, 2013, Thompson was only asked to confirm the existence of the 2007 Maine criminal judgment:

> THE DEFENDANT: One more time, what conviction?
>
> THE COURT: Sure. The conviction was in 2007, March 1, unlawful trafficking of scheduled drugs. It occurred in Androscoggin County Superior Court in Auburn, Maine.
>
> THE DEFENDANT: Yes, sir.

ECF. No. 119, p. 3.

This short testimonial exchange accords with page 7 of the Government's response brief, where it is stated that Thompson never indicated a litigation tactic of contesting the existence of the 2007 Maine judgment. Indeed, at the Rule 11 colloquy, Thompson testified:

> THE COURT: And the Government has also filed an information charging a prior conviction of a felony drug offense in Androscoggin County Superior Court in Auburn, Maine, entered on March 1, 2007, which will affect the penalties. Do you understand that that information has been charged?
> THE DEFENDANT: Yes, sir.

ECF. No. 50, p. 6; *see also* Appellant's Opening Br. at 3 [referencing Rule 11 colloquy concerning the 2007 Maine conviction].

At its core, the problem is that it was never established what type of narcotics or narcotics quantity undergirded the 2007 Maine conviction.

## II. The Government Is Trying To Make Arguments Broader Than The Scope Of This Court's Grant of C.O.A. Admits To

This Court's June 2022 order was clear:

> We grant a COA as to a ***single claim***: whether counsel provided constitutionally ineffective assistance by failing to argue that Thompson's prior conviction under 17-A M.R.S. § 1103 did not qualify as a 'controlled substance offense' for purposes of U.S.S.G. § 4B1.2(b).

(emphasis added).

Thompson is not clear why the Government takes umbrage that his opening brief "focus[ed] exclusively on trial counsel's failure to challenge whether his Maine unlawful trafficking conviction qualified as a career offender predicate…" [Appellee's Br. at 23]. Had Thompson focused his opening brief on any other aspect of his representation in the trial court or in his prior appeal to this Court (*see United States v. Thompson*, 851 F.3d 129 (1st Cir. 2017)), the Appellee's brief would surely have objected that Thompson was trying to unfairly present arguments outside or beyond or extended past the scope of this Court's COA grant.

Thompson's larger point is that the law does not cognize some sort of 'advocacy relativism' through which very good work by a defense lawyer in one part of a case 'covers-up' or 'fills-in' or 'papers-over' deficient performance demonstrated in some other aspect of the representation. For example, on page 28, the Government makes a value-charged observation that "trial counsel ably and vigorously advocated for Thompson before and at sentencing." In reply, Thompson contends that 'vigorous' advocacy in some ethereal sense does not excuse a specific contention of deficient performance in habeas.

The Government's response brief is problematic insofar as it seeks to elide the issues associated with this one claim on which COA was granted by instead focusing on other aspects of the representation of Thompson which is regards as having been very robust. For example, on page 28 of the Government's brief, the following encomium is written about objections made by defense counsel concerning matters other than the 17-A M.R.S. § 1103 issue:

> Trial counsel also raised several other plausible objections to the PSR, including challenges to the overall drug quantity, the organizer-leader role adjustment, the failure to give Thompson credit for acceptance of responsibility, and the impact of the Supreme Court's decisions in Alleyne and Apprendi on the appliable statutory mandatory minimum and advisory guideline range.

All of the items on this list are true, but beside the point (or, at least, not even tangential to the claim on which COA was granted predicating the appeal *sub judice*).

Similarly, Thompson is not clear what point the Government is trying to make on page 17's footnote 7 where it is written: "three different attorneys represented Thompson during the period after his change of plea but before his sentencing" because, in general, "the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment ...." *Wheat v. United States*, 486 U.S. 153, 159 (1988). By all accounts, the presiding federal district judge was generous with substitution of different counsels. But this is entirely beside any point germane to the claim on which COA was granted.

"Under the Sixth Amendment, criminal defendants have the right to competent counsel at various 'critical stages of a criminal proceeding,' including (as relevant here) at their sentencing proceedings." *United States v. Messner*, 37 F.4th 736, 740 (1st Cir. 2022) (quoting *Lafler v. Cooper*, 566 U.S. 156, 165, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012)). Since none of the different defense counsels "argu[ed] that Thompson's prior conviction under 17-A M.R.S. § 1103 did not qualify as a 'controlled substance offense' for purposes of U.S.S.G. § 4B1.2(b)", it is a little hard to see how it should matter to this Court's decisional process if one specific lawyer's performance fell below *Strickland*'s first prong since none of these lawyers made the argument that would have prevailed had it been posited during their respective tenures as counsel to Thompson.

## III. THE GOVERNMENT IS SPECULATING AS TO STRATEGIC REASONS THAT SENTENCING COUNSEL MIGHT HAVE HAD FOR NOT OBJECTING TO THE MAINE NARCOTICS CONVICTION

Thompson contends that the following argument [and its implicitly urged conclusion] in the Appellee's brief represents pure speculation:

> [I]t ***appears*** that trial counsel was knowledgeable about the law and facts relevant to both of Thompson's career offender predicates and chose to challenge only Thompson's Massachusetts ABDW conviction, which ***appeared*** to be the more viable challenge to his career offender designation at that time.

Appellee's Br. at 25-26 (emphasis added).

The highlighting of the words "appears" and "appeared" in the foregoing is intended to demonstrate that while the Government must [quite understandably] urge this conclusion in order to prevail on *Strickland's* first prong in the habeas appeal *sub judice*, there is nothing to substantiate this urged conclusion beyond the *ipse dixit* of the Appellee.

Thompson is aware that "[u]nder the first prong of *Strickland*, there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight." *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006) (*quoting Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.). The problem is that "a decision cannot be fairly characterized as 'strategic' unless it is a conscious choice between two legitimate and rational alternatives. It must be borne of deliberation and not happenstance, inattention, or neglect." *Wood v. Allen*, 558 U.S. 290, 307 (2010). "*Strickland* does not establish that a cursory investigation automatically justifies a tactical decision with respect to sentencing strategy. Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003).

Unlike the strategic tradeoff made by trial counsels who have to contend with whether or not to call to the stand a witness who might well open the door to other harmful evidence against the client he or she is defending, it is a little hard to

see what unintended consequence could have redounded to Thompson's detriment had his counsel objected to the Maine narcotics conviction.

To phrase this point in polemical questions: 1) Was the attack on the Massachusetts conviction buttressed or enhanced by counsel's failing to attack the Maine conviction at all? 2) Would the attack on the Massachusetts conviction have been derogated or undermined or otherwise weakened had an attack also been mounted as to the Maine conviction? 3) Did the sentencing judge have some formal or informal limit on the number of objections he would entertain?

Thompson contends that the answers to all of these questions is "no"; hence, there is no strategic reason for the omission under the first prong of *Strickland*.

## IV. THE GOVERNMENT'S CITATIONS TO *STEED* AND *REED* ARE APROPOS OF NOTHING

As best as Thompson can tell, the Government is urging a 'standard of care' that no defense lawyer should ever have to object to a career offender characterization arising from conviction under the Maine narcotics laws:

> This Court's precedents suggests that defendants often declined to challenge whether Maine unlawful trafficking convictions qualified as controlled substance offenses both before and after 2017 Mulkern.

Gov't Br. at 26.

The first problem is that "this Court's precedents" are hardly the empirical observation study that the Government ascribes. In other words, two appellate opinions [in which no one pressed the issue of career offender characterization

germane to the Maine narcotics law] hardly establish a prevailing standard under *Strickland* or any other professional metric.

Second, the Government's brief concedes that the issue on which this Court granted COA in the case *sub judice* was not an issue in either case cited on pages 26-27. Please note that neither case presented in the habeas context. Moreover, one cannot know from reading these opinions why the defense counsels in those cases did or did not make any hypothetically available objections in their respective sentencings. In *United States v. Reed*, the defense lawyer withdrew the objection when he or she apparently concluded it was no longer meritorious:

> Reed initially objected to the September 15, 2008, arrest date, arguing that he had not been arrested for the first drug offense until October 29, 2008, over a month after he had committed the second drug offense. When questioned by the district court at a presentencing conference, however, defense counsel affirmatively stated, 'I think I withdraw my objection' to the September 15, 2008, arrest date. And even now on appeal, Reed's brief accepts September 15, 2008, as the date of arrest for the first predicate felony.

*United States v. Reed*, 830 F.3d 1, 5 (1st Cir. 2016).

The Government's citation to *United States v. Steed* is even further off the mark. Quite saliently, it was the Government who appealed a sentence it regarded as excessively lenient. Regardless, this Court was clear that the issue on appeal trained on the characterization of "attempted second-degree robbery under New York law."

> The dispute before us therefore concerns only whether the government is right in contending that, contrary to the District Court's ruling, Steed's conviction for attempted second-degree robbery under New York law qualifies as a predicate conviction under the career offender guideline as a 'crime of violence.'

879 F.3d 440, 444 (1st Cir. 2018).

In sum, *Steed* does not speak at all about the impact of 17-A M.R.S. § 1103.

## V. PREJUDICE/ HARM ANALYSIS [GERMANE TO *STRICKLAND*'S SECOND PRONG]: AT SENTENCING, THE DISTRICT JUDGE WAS CLEAR "IF, IN FACT, I'M REVERSED ON APPEAL IN TERMS OF CAREER OFFENDER STATUS, HE COULD PURSUE THOSE LATER"

Thompson does not agree with the Government's argument that his prejudice/harm arguments under Strickland's second prong were in any sense "perfunctory." Gov't Br. at 30.

To establish that the deficiency was prejudicial, defendant must show "that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different." *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 70 (1st Cir. 2009) (*quoting Sleeper v. Spencer*, 510 F.3d 32, 39 (1st Cir. 2007).

Thompson clears this hurdle in part based on statements by the district judge at sentencing:

> THE COURT: And Mr. Vincent, I want to make sure you took care of your's. You objected to the inclusion of the new 10(B) paragraph and ***you're reserving all your arguments concerning guideline findings that might be immaterial if I find he's a career offender***; is that right?

> MR. VINCENT: That's correct, Judge.
> THE COURT: And you're also preserving your objection saying he's not a career offender based upon the Paragraph 44 conviction from Massachusetts of assault and battery with a deadly weapon; have I got that right?
>
> MR. VINCENT: Yes, Your Honor.
>
> THE COURT: All right, thank you. I just want to make sure we had the record clear for those purposes.

ECF. # 119, at 23 (emphasis added).

In other words, the sentencing judge was pellucid that he was holding in reserve Thompson's other Guidelines/procedural arguments that were subsidiary to the career offender characterization. And the reason that the sentencing judge only mentioned the Massachusetts conviction was that defense counsel had defaulted/forfeited his challenge to the Maine conviction.

But even if this statement by the sentencing judge were not enough to persuade this Court that Thompson satisfies *Strickland*'s second prong, the sentencing judge offered even more by way of alternative/less severe Guidelines calculations "if, in fact I am reversed on appeal in terms of career offender status":

> There is dispute about the enhancements that would apply. The base offense level, I think, is not disputed, that it would be 28 under Group 1 and 24 under Group 2, but there is objection to the enhancements and I conclude that the career offender determination here makes it unnecessary to resolve those disputes. The defendant has preserved his objection that if**, in fact, I'm reversed on appeal in terms of career offender status, he could pursue those later**, but I'm not going to make a determination now.
>
> There would, of course, be a multiple count adjustment if we went in that route, but I conclude that under guideline 4B1.1, Mr. Thompson is a career

> offender. The crime to which he has pleaded guilty and to which I will sentence him today qualifies for career offender status and **he has two predicate convictions, Paragraphs 43 and 44**, which qualify.

ECF. # 119, at 44 (emphasis added).

In sum, the sentencing judge indicated that a much less severe sentence under the Guidelines potentially awaited Thompson in the event of an appellate reversal on the career designation.

## CONCLUSION

As for *Strickland*'s first prong, U.S.S.G. § 4B1.2(b) requires two predicate convictions. While the Massachusetts conviction was found to qualify in this Court's opinion on Thompson's direct appeal, the 2007 Maine judgment does not survive the categorical approach in this Circuit. Why did the Maine conviction pair with the Massachusetts conviction? Only because trial counsel did not mount the proper challenge to Probation's characterization of the Maine conviction.

As to *Strickland*'s second prong, the Government is totally off base that Thompson's argument is "perfunctory." In striking contrast, the sentencing judge made clear that different procedural/Guidelines calculations would obtain in the event of an appellate reversal on the career offender conclusion: "**in fact, I'm reversed on appeal in terms of career offender status, he could pursue those later**, but I'm not going to make a determination now."

For these reasons, Thompson's case must be remanded for resentencing in the correct Guidelines framework.

Respectfully submitted,

/s/ Seth Kretzer

______________________

Seth H. Kretzer
LAW OFFICES OF SETH KRETZER
917 Franklin Street; Floor Six
Houston, Texas 77002
seth@kretzerfirm.com (email)

[Tel.] (713) 775-3050
[Fax.] (713) 929-2019

COURT-APPOINTED ATTORNEY FOR
APPELLANT THOMPSON

**CERTIFICATE OF SERVICE**

I certify that the Reply Brief of Appellant was filed with the Court by U.S. Mail, and in electronic format through the ECF system on the 1st day of February 2023. An electronic copy of the brief was served on counsel of record, as listed below, through the ECF system, on the same date.

/s/ Seth Kretzer

__________________________

Seth H. Kretzer

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains 2,649 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using Microsoft® Word 2007 in 14-point Times New Roman type.

Date: February 1, 2023

/s/ Seth Kretzer
______________________
Seth H. Kretzer